## HENRY WARD *v.* THE STATE.

1. CHARGE OF THE COURT — CIRCUMSTANTIAL EVIDENCE. — Where the guilt of the accused is dependent solely upon circumstantial evidence, it is the duty of the court to apply, in its charge, the law applicable to such evidence, whether so requested or not.
2. PRESUMPTION OF LAW — EVIDENCE. — Though the conclusion of guilt is presumed from the facts found, these facts must be strictly proved by the testimony of witnesses under whose observation they have actually and directly fallen, or the presumption of guilt must be made from facts which have been established by inference from the elementary facts of the case. The guilt of the accused should flow easily and naturally from the facts proved, and be consistent with all the facts.
3. EVIDENCE *held* insufficient to sustain a conviction for theft.

APPEAL from the District Court of Ellis. Tried below before the Hon. G. N. ALDREDGE.

The bill of indictment charged that the appellant and John Turner, on the 15th day of November, 1878, in the county of Ellis, did take, steal and carry away, from and out of the possession of M. N. Frank, sundry dry goods of the aggregate value of $250. A verdict of guilty assessed the punishment at two years' confinement in the State penitentiary.

Introduced by the State, L. Butler testified that himself and Allen Butler visited Larkins Butler, who was living on the Turner farm, adjoining the home of witness, on the evening before the offense was said to have been committed. About sundown the appellant and John Lawhorn, riding a mule, and John Turner, riding a horse, rode up from the direction of old man Ward's. After supper, it being a little after dark, the appellant riding a mule and Turner a horse left, saying they were going to Milford. About an hour and one-half before day, John Turner, cold, wet and drunk, came into the room in which the witness, Allen and Larkins Butler, and John Lawhorn were sleeping. He did not go to sleep. About daylight the witness went down to the horse-lot to feed, and saw the appellant standing near the barn, behind which a gray horse which belonged to old man Ward was tied. Between day and sunrise, while the witness was standing near the lot fence, he saw, about forty yards off, in the orchard, a gray blanket spread out on the ground, and went to it. It was muddy and wet, but appeared to be new. This blanket the witness gave to Larkins Butler. About sun-up appellant and Turner left together, walking off in the direction of old man Ward's. In an hour and a half they returned, went up to a loft, and then towards home. Witness found fresh mule and horse tracks leading up to the blanket from across the creek, up through the field west of the house.

Allen Butler, for the State, testified substantially as the witness L. Butler.

Ed. Chaskie, for the State, testified that he was merchandising in Milford at the time of the alleged theft. On that night John Turner was in his store and wanted to buy an overcoat and boots on credit. Witness refused to sell, and Turner said he had a friend outside from whom he would see if he could borrow the money. The witness immediately closed his store, locking his doors.

J. J. Jennings testified, for the State, that he and Roths-childs were keeping the goods for Franks, who was in Corsicana. He went home a little before dark on the evening of the night on which the store was robbed. The blanket claimed to have been found by the witness Butler was similar to, and, in the opinion of the witness, was one of a lot missed from the store. The witness had had sold similar blankets a short time before. This blanket he received from Larkins Butler after the theft. The other goods missed, consisting of such as are described in the indictment, overcoats, shoes, blankets, etc., were afterwards recovered. Franks lived in Corsicana, and had not been in Milford for six weeks previous to the robbery. The witness did not know his present where-abouts,— had not seen him for two years.

For the defendant, Warren Ward, a brother, testified that about sundown on the evening of the alleged robbery, he saw the appellant, John Lawhorn and John Turner at his (witness' and appellant's) father's house. The two last named parties had been running cattle out of Mrs. Turner's field. The appellant got up behind Lawhorn on a mule, and they started towards Mrs. Turner's. John Turner and appellant returned to witness' father's house, where both were staying, about 10 o'clock. The appel-lant had been drinking. He lay down on a pallet with the witness, and lay there until about day, when he got up and said that he must return Lawhorn's saddle and get some whiskey from Turner. He left and returned about sunrise with Turner. They took breakfast and left again. When the appellant came in that night of the alleged robbery, he left Turner in the barn. The appel-lant had none of the goods mentioned in the indictment when at his father's. Thomas Ward testified substan-tially to the same effect.

A. Zollicoffer testified that, on the night of the alleged robbery, he met the appellant and John Turner, about 9

o'clock, traveling from towards Milford, the appellant riding his father's gray mare. Neither had with them any of the goods described in the indictment.

Monroe Dean, a cousin of the appellant, testified for the defense that he was subpœnaed on behalf of the State about the second day after the alleged robbery. In going to Mr. Ward's, the witness saw Larkins Butler walking along a dry branch near the road. He asked him where he was going, and Butler said "to Mr. White's." After passing him, the witness looked back and saw him leave the road to White's and follow a path through a thicket of timber. Thinking strange of this, the witness returned in a few hours, followed the same path and Butler's foot tracks, through the thicket into the bed of the branch, and on a bluff found some goods. He informed Jennings, who got and recognized them as some of the stolen goods.

John Sproulls testified, for the defense, that at the time spoken of by the witness L. Butler a blanket spread on the ground in the orchard could not be seen from the lot from where Butler said he saw it, because of intervening corn-stalks and weeds.

Joel Turner, brother of John Turner, testified that the field west of the house, spoken of by the witness L. Butler, had no opening in the direction spoken of, until the fence reached the creek near the horse lot, where there was a gate, and was not in the direction of Milford. Witness admitted that he was under indictment found in 1877, in Ellis county, for assault to murder. He left Ellis and was arrested in Noland county, in 1877.

The State recalled L. Butler, who, explaining the testimony of Dean, stated the locality of the goods found by Dean to be in the direction taken by appellant and Turner, when they left the house on the morning after the robbery as stated by him in his evidence in chief. The State also proved that Larkins Butler, the person spoken of by the witness, had been in attendance upon every term of

court until about six weeks before this trial, when he returned with his family to the State of Mississippi, whence they came.

*E. P. Anderson*, for the appellant.

*H. Chilton*, Assistant Attorney General, for the State.

HURT, J.   The appellant was tried and convicted of theft of goods from the store of M. N. Frank.   There are two errors assigned by appellant, upon which the judgment is asked to be reversed: 1st, that the court below failed to charge upon circumstantial evidence; and 2d, that the evidence fails to support the verdict.

The assignments, we think, are well made.   This is a case of purely circumstantial evidence, and it was the duty of the court below, whether asked or not, to give in charge the law applicable to such a case.   See *Myers* v. *State*, 6 Texas Ct. App. 1; *Burrell* v. *State*, 18 Texas, 713; *Cave* v. *State*, 41 Texas, 182; *Hunt* v. *State*, 7 Texas Ct. App. 212; *Smith* v. *State*, id. 382; *Struckman* v. *State*, id. 581.

The second ground for which the judgment is sought to be reversed is that the evidence fails to support the verdict of the jury.   After a very careful examination of the statement of facts, we must conclude that if there is a fact proved, not presumed, which reasonably tends or leads to the guilt of the appellant, we have not been able to discover it.   The rule dictated by justice and reason requires that the evidentiary facts be proved and not presumed.   The conclusion of guilt is presumed from the facts found, but these facts must be *proved*, in the strictest sense; that is, they must be shown to be true by the testimony of witnesses under whose observation they have actually and directly fallen, or the presumption of guilt must be made from leading facts which have been

established by inference from the elementary facts of the case.   Burrill on Cir. Ev. 136–8.

Another rule which is approved by all thinking and just men requires that guilt should flow naturally and easily from the facts proved, and be consistent with all of the facts.   § 812, rule 4, 1 Stark. Ev. 561–573.

Apply these plain and just principles to the facts in this case, and we think it will be found that there is no fact proved, either by direct or presumptive evidence, tending or leading to the guilt of the appellant,— such presumptive evidence as is required by the rule.   See this question illustrated by Burrill, p. 137.   In order to convict the appellant, the facts must have been presumed in this case from other doubtful conclusions not authorized by the proved facts of the case.   As the judgment will have to be reversed and the case tried again, we will not comment on the evidence.

For the errors above noticed, the judgment must be reversed and the cause remanded.

*Reversed and remanded.*